UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GERARDO FLORES, et al.,

Plaintiffs,

v. 13 CV 8592 (SN)

EASTERN FARMS, INC., et al.,

Defendants.

------------------------------x

New York, N.Y.
June 16, 2015
2:15 p.m.

Before:

HON. SARAH NETBURN,

Magistrate Judge

APPEARANCES

CILENTI & COOPER
Attorneys for Plaintiffs
BY: GIUSTINO CILENTI

LEE & TAPALAGA, LLP
Attorney for Defendants
BY: JOHN HYUK LEE

THE DEPUTY CLERK: In the matter of Flores, et al. versus Eastern Farms, Inc., et al., Docket No. 13 CV 8592.

Counsel, please state your names for the record.

MR. CILENTI: Good afternoon. Giustino Cilenti, of Cilenti & Cooper, for plaintiffs.

THE COURT: Good afternoon.

MR. LEE: For the defendants, John Lee. Good afternoon, your Honor.

THE COURT: Good afternoon.

Thank you, all, for coming in. My crew of summer interns is a little disappointed that our trial was resolved, but we're here to hear a little bit about the settlement that the parties have agreed to. I have some of the broad-picture outlines that you described for me on the telephone call last week, but, Mr. Cilenti, why don't you tell me in more detail what's being contemplated and why you think this is a fair resolution for your clients.

MR. CILENTI: Judge, the terms of the settlement are as follows:

The defendants agreed to pay the plaintiffs a total of $425,000, $75,000 of which will be paid on or before July 15th, 2015. Thereafter, starting on September 1st, 2015, the defendants agreed to make 28 payments, consecutive and equal, consecutive monthly payments and equal payments, in the amount of $12,000 each; and the 30th and final payment will be for a

total sum of $14,000.

THE COURT: When do you contemplate the settlement being completed?

MR. CILENTI: Today -- well --

THE COURT: Sorry, the payment.

MR. CILENTI: The payment? There's 30 total payments, so it's about two and a half years.

THE COURT: Okay. You don't have a date, though?

MR. CILENTI: No, I don't.

THE COURT: Okay.

MR. CILENTI: I'm thinking the end of two thousand --

THE COURT: Well, two and a half years is going to get us to probably March of 2018, I think.

MR. CILENTI: Right, somewhere around there; February maybe.

THE COURT: Okay.

MR. CILENTI: The defendants are going to pay the monthly installments by regular check. In the event that any of the checks are returned to us by the bank due to insufficient funds, the defendants agree to pay a penalty of $200 for each such check.

We will provide written notice to defendants' attorney if any of the checks are returned to us due to insufficient funds. The defendants will then have ten days to provide us with a replacement check but the replacement check has to be by

certified funds.

There is a penalty for a default, whether that's a default due to the defendants' entire lack of payment, installment payment, or due to insufficient funds. There is a penalty. We will again provide written notification to defendants' counsel, both by fax and email. They will have ten days to cure the default and provide us with a check or a certified check due to insufficient funds.

To the extent that the defendants fail to cure the default within the ten-day period, the entire amount outstanding at the time of the default immediately becomes due and owing as of the 11th day, together with a penalty of $85,000, as well as reasonable attorneys' fees and costs incurred by the plaintiffs to enforce the terms of the settlement.

THE COURT: Sorry, the penalty was 85,000?

MR. CILENTI: Yes.

THE COURT: Plus attorneys' fees for the effort to make good on the payment?

MR. CILENTI: Correct.

As part of that, the plaintiffs can apply to the court to have immediate judgment entered against the defendants, on notice, of course, to defense counsel.

If the defendants allege a breach of the settlement in any way by any of the plaintiffs, the defendants agree to

continue to make the monthly installment payments, so long as it's payable to the defendants' attorneys and held in escrow while the issue of any alleged breach by any of the plaintiffs is being determined.

The defendants can seek a hearing with the Court as to any alleged breach by the plaintiffs.

THE COURT: What sort of terms are the plaintiffs being held to, that they might breach?

MR. CILENTI: Well, there really isn't any, to be honest with you. I just do this as a precaution. In most cases -- sometimes there are settlement agreements that contain confidentiality provisions. In this particular one, we are not going to agree to a confidentiality provision. So I don't really know what there could be that the plaintiffs could breach, but to the extent that there are any issues that the defendants raise for any reason whatsoever, we want to ensure that the installment payments are being made when they're supposed to be made, and held by defendants' counsel in escrow. This way, once whatever issue is raised, is resolved, and if it's resolved in favor of the plaintiffs, that whatever is being held in defense counsel's escrow account, it gets paid out immediately.

THE COURT: There's no nondisparagement, for instance?

MR. CILENTI: Neither side requested it from the other. So, no, there is no nondisparagement clause.

THE COURT: So remind me, is it 17 or 18 plaintiffs?

MR. CILENTI: Eighteen.

THE COURT: Of the 18 plaintiffs, do any of them still work for the defendant?

MR. CILENTI: I believe two.

THE COURT: And there's no provision that prohibits that those who no longer work there to reapply?

MR. CILENTI: Defendants did not request that, but I'm pretty sure that none of the plaintiffs are going to reapply.

THE COURT: Okay. I'm just trying to come up with what could possibly be a breach.

MR. CILENTI: If there is a breach alleged by the defendants for any reason, they would of course have to establish it as a matter of law. The prevailing party in any such hearing or proceeding has the right to have their reasonable attorneys' fees and costs paid as a result of having to come and defend or to prosecute such a proceeding.

I think, Judge --

THE COURT: I have a few other questions, unless there's something you want to tell me first.

MR. CILENTI: No, I'm just trying to make sure that I have all of the terms.

I don't know that I made clear, Judge, that the installment payments would be made on the 1st of each month, starting on September 1st, after the initial payment, which is

July 15th.

THE COURT: Okay.

Tell me a little bit about how the plaintiffs are being compensated. Specifically, what I am wondering is, how did you determine what amount each individual plaintiff is entitled to? How does that number stand up to the amount that you were seeking at trial? And is there any prioritizing as to how each plaintiff is being paid, or is each getting a little bit at every installment so everybody is sort of in it for the long haul together, or are certain plaintiffs being paid before others?

MR. CILENTI: Everyone's in it for the long haul. They're each going to get 30 payments. And the way --

THE COURT: And your firm will distribute those checks, you'll get one check from defendants and you'll deposit it and distribute?

MR. CILENTI: Correct.

THE COURT: Okay.

MR. CILENTI: And the way it's determined, as far as how much each plaintiff will get, as the Court is aware, in anticipation of trial, we calculated each plaintiff's alleged damages. And what we'll do is, what we normally do is, we come up with a total amount of unpaid wages that we believe is owed to the whole group and then we break down what each plaintiff's percentage share of that total amount is.

So, in other words, just by way of example, if we had $100,000 in unpaid wages and we had ten plaintiffs, I don't know that it would be an equal share of 10 percent each, but depending on the amount of hours that they worked and the amount of pay that they received, each person's pay or unpaid wages would be calculated by a percentage share. And that's the same way that -- once our fee is carved out of the settlement amount, the remaining amount that's left would be distributed to each plaintiff based on their percentage share of their unpaid wages.

THE COURT: Are you also in it for the long haul?

MR. CILENTI: I am, I am.

THE COURT: I want to ask you about your fees separately but let's just continue with your clients. I know you provided for purposes of trial what you believed to be their wages owed.

How does the 425-less-fees number stack up against the amount that you were seeking at trial?

MR. CILENTI: Including liquidated or not?

THE COURT: It's all the same, so if you want to compare it just wages or if you want to compare it to the total.

MR. CILENTI: I think the wages came out to slightly above 700,000, and with liquidated damages, it was slightly over a million.

We can get into the fairness part of that now or we can wait on --

THE COURT: Sure.

MR. CILENTI: We understand, it's plaintiffs' position, that we're leaving money on the table. There's no question in our mind about that. I think defense counsel probably has a different view of that, but we believe that we're leaving money on the table. However, I think that's true of any settlement; there's going to be money left on the table.

In these FLSA cases, I think the courts are aware, and the parties are aware, that there is a range of reasonableness that gets applied to each such case and really there's no golden rule as to what that range is. It's kind of a case-specific analysis.

In this particular case, we do feel that we are leaving about 50 percent of the money on the table. However, we have done our due diligence on the defendants. The defendants have always maintained a financial hardship and an inability to pay a substantial amount more than what they're settling for today.

We're confident that we have done our research on the defendants, we have done our asset research on the defendants, and while we think we could have obtained a larger judgment had this gone to trial, based on the information that we received, the likelihood of us being able to collect 100 percent of that

judgment was probably small to none.

We know that the defendants had filed bankruptcy once before. We know that they have another pending Department of Labor investigation for years prior to the years at issue in this case, for a separate set of employees, so they're being kind of hit on both ends in that respect, for probably the better part of 12 years, going back from today. We know that they had a landlord issue where they were in arrears with their landlord and were in discussions with the landlord about renewing their lease, there was some possibility that they were going to lose their lease. I don't know if that was ever rectified or not, but we know that that was an issue previously.

So we think that, based on the information that we have, there's -- there's a balancing act here, we know that, and we are more concerned about the fact of, yes, we'll have a large judgment but we won't be able to collect on it. I think settling today gives our clients some finality. It's an amount that's more than de minimis, for sure, and it's also an amount that the defendants had represented to us that they can sustain without having to go file a second bankruptcy filing or without defaulting. So we're hopeful that that is the case and that we won't have to come back here again advising the Court that there's been some sort of default along the way.

But I think, like I said, Judge, it provides some

finality to the plaintiffs, it provides them with some guaranteed money, a substantial amount of money for each plaintiff, and I think it's a number that they can live with, and the defendants have told us that they can live with.

THE COURT: What is your fee arrangement here?

MR. CILENTI: Our fee arrangement is one-third.

THE COURT: One-third?

And do you know what your lodestar is?

MR. CILENTI: It's close. I can't say for sure it's a hundred cents right there, but it's pretty close because of the amount of time that we spent with the records and also, of course, preparing all the way up to what we thought was going to be a trial.

THE COURT: Okay.

Mr. Lee, anything you want to add?

MR. LEE: Yes, your Honor.

Just to confirm Mr. Cilenti's account of the terms, everything is accurate except for the fact that there was discussion, I did provide Mr. Cilenti with a release language that specifically states that the plaintiffs will give up all claims that they may have had in the past until the present day, which included the ability to reapply as well as any backpay, overtime liquidated damages, attorneys' fees regarding any labor claims. And the default by the plaintiff will be a scenario where they will disregard their obligation under the

release and conduct the very same -- or institute or commence a claim that will subject the defendants to defend unnecessarily.

THE COURT: So this is a general release that would include antidiscrimination statutes and things like that?

MR. LEE: Yes, your Honor.

THE COURT: And, Mr. Cilenti, you've advised your clients of that?

MR. CILENTI: Yes, Judge.

THE COURT: Okay. And they all understand what that means?

MR. CILENTI: Yes.

MR. LEE: Yes, your Honor. So I guess the default language that applies to the plaintiffs would be that scenario. And I don't anticipate any other scenario besides that.

THE COURT: Thank you. That clarifies it.

And with respect to your clients' ability to pay, you're satisfied, based on your discussions with your client, that they will make good on the settlement agreement and follow this protocol?

MR. LEE: Yes, your Honor. And as the Court is aware from the last time I was before your Honor, their offer was 250,000. And I have had very long discussions with my client on their ability and what they're capable of to successfully settle this case and make payments, and I had many long discussions with Mr. Cilenti to make sure that this is really

about exactly as Mr. Cilenti said, not really disputing about the merits of the case but it's about what my client could pay to bring this case to a settlement. And we did provide Mr. Cilenti with information as well as the reasoning why we could offer what we could offer. And we came to this settlement after numerous discussions, and we feel that both parties are agreeable to the number before the Court.

THE COURT: Okay.

Is it contemplated that the settlement agreement is going to be submitted to me for me to so-order or is that unnecessary?

MR. CILENTI: Judge, it was my intention that the record would serve as essentially --

THE COURT: That's fine. I just want to make sure.

MR. CILENTI: Yes.

THE COURT: Okay.

Well, thank you, all. I've had a lot of experience with this case, including before you got involved, Mr. Lee, with prior counsel, and I know we have worked hard. I think we had at least two settlement conferences and maybe even a third when Mr. Lee got involved, but we've been working hard to settle this case. I am satisfied that both sides have excellent counsel and that we have probably hit the sweet spot as far as a dollar amount that reflects an appropriate resolution of the plaintiffs' claims, given their allegations

and the risks inherent with trial, and an amount that the defendants can pay consistent with the terms of the agreement.

I know that the defendant has been suffering or at least have represented to me -- and I have met with the principals at settlement conferences -- that they have had financial difficulty. I didn't know about this second DOL investigation but that sort of even raises the specter even more, about the ability to pay if the plaintiffs were awarded a substantial judgment beyond the amount that the parties have settled for today. So I am satisfied that this settlement agreement is a fair and is a reasonable resolution for these claims.

I'm satisfied that the plaintiffs understand their obligations, including, as now clarified to me, the general release that they're each going to be asked to sign, which will extinguish any possible claims that they have, even claims that are totally unrelated to their wage-and-hour claim.

And I am satisfied in the manner in which the funds are being distributed, which is to say: The plaintiffs are getting their pro rata share based on their reasonable estimate of what they are owed; that everybody is getting payment over time, so nobody is being prioritized over anybody else, including counsel; that everybody is going to be working together.

This is a minor issue but just for clarity, in what I

hope is the unlikely event that there is a bounced check and the $200 fee is paid to the plaintiffs, is that money for counsel, whatever fee is accrued?

MR. CILENTI: We intend to distribute it, both with fees and to the plaintiffs.

THE COURT: Okay. So it will be just like any other settlement compensation?

MR. CILENTI: Correct.

THE COURT: And I understand that the settlement agreement is going to provide for my continued jurisdiction in the case until final payment and that the parties will reach out to me if there are any issues, and I will jump on the case again.

So with that, I'm going to approve the settlement agreement.

I want to thank everybody. I know you worked really hard, particularly towards the very end of this process. I have two large boxes in my office, which we will send to storage. And I will issue an order today that closes the case out and finds the agreement to be fair and reasonable.

MR. CILENTI: Thank you, Judge.

MR. LEE: Thank you, your Honor.

THE COURT: Thank you very much, everybody.

MR. LEE: Thank you.

(Adjourned)